IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JOAN KREMPA, #925192,                *

        *Plaintiff*,                *

        v.                *        CIVIL ACTION NO. ELH-11-2597

CARROLL PARRISH, WARDEN, and        *
DR. JADA SINGH,
                        *

        *Defendants*.

             ******

MEMORANDUM

Plaintiff has filed suit against medical defendant Jada Singh, M.D.[1] and correctional

defendant Warden Carroll Parrish, complaining that on January 23, 2011, she fell on her knee as

a result of a water leak at the institution, which was "allowed to fester over the years," and that,

despite extreme swelling and pain, Dr. Singh repeatedly dismissed her injury and the need for

treatment. ECF 1, as supplemented in ECF 5. Defendants have moved to dismiss or, in the

alternative, for summary judgment, and have submitted numerous exhibits. *See* ECF 9, 15.[2]

Plaintiff has responded to the motions. *See* ECF 13, 14.[3] Dr. Singh filed a reply, ECF 17, and

plaintiff subsequently submitted additional responses. *See* ECF 3, 19, 20.

Because materials outside the four corners of the pleadings have been submitted, I shall

---

[1] The Clerk shall amend the docket to reflect the full name of this defendant.

[2] Defense counsel has also responded on behalf of Dr. Singh's employer, Corizon, Inc., f/k/a Correctional Medical Services Inc., ECF 9, although Corizon was not directly named as a defendant. *See Powell v. Shopco Laurel Co.,* 678 F.2d 504, 506 (4th Cir. 1982); *McIlwain v. Prince William Hospital*, 774 F.Supp. 986, 990 (E.D.Va. 1991).

[3] Plaintiff was given notice of her rights and responsibilities in accordance with the requirements of *Roseboro v. Garrison*, 528 F. 2d 309, 310 (4th Cir. 1975). *See* ECF 10, 16. The Court is mindful that plaintiff is without counsel. Therefore, her pleadings have been liberally construed. *See Erickson v. Pardus*, 551 U.S. 89 (2007).

construe the defense motions as motions for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. *See Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). Upon review of all the submissions, the Court finds that a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2011).

In ECF 14, at 2, plaintiff also requested appointment of counsel. A federal district judge's power to appoint counsel under 28 U.S.C. § 1915(e)(1) is discretionary and may be considered where an indigent claimant presents exceptional circumstances. *See Cook v. Bounds*, 518 F.2d 779 (4th Cir. 1975); *see also Branch v. Cole*, 686 F.2d 264 (5th Cir. 1982). The question of whether such circumstances exist in a particular case hinges on the characteristics of the claim and the litigant. *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984). Where a colorable claim exists but the litigant has no capacity to present it, counsel should be appointed. *Id*. Having considered plaintiff's filings, the Court finds that she is quite articulate, and has demonstrated the wherewithal to articulate the legal and factual basis of her claims. Furthermore, the issues do not appear unduly complicated. Therefore, there are no exceptional circumstances to warrant the appointment of an attorney to represent plaintiff under 28 § 1915(e)(1).

## Background

Plaintiff, currently confined at the Maryland Correctional Institution for Women (MCI-W), seeks money damages and injunctive relief mandating compensation for future medical expenses with respect to a knee injury she sustained in a slip-and-fall incident that occurred on January 23, 2011. *See* ECF 1, as supplemented in ECF 5. Plaintiff alleges that Warden Parrish failed to act on reports that a leaking pipe in the recreation area needed repair. *See* ECF 1 at 4-6. Further, she alleges that Dr. Singh failed to promptly and adequately treat her knee injury after the fall.

*See* ECF 1 at 5-6.  She also claims that Dr. Singh acted improperly in failing to provide any care to plaintiff, including pain management and an MRI, and complains that Dr. Singh is not a licensed physician.[4]   *See* ECF 5.  Plaintiff suggests knee replacement surgery as "a solution." ECF 13 at 2.

## Standard of Review

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.,* 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"  *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.,* 290 F.3d 639, 644-45 (4th Cir. 2002).  The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually

---

[4] The latter claim is specious.  Dr. Singh is fully licensed as a physician by the State of Maryland.  ECF No. 9, Exhibit 6.

unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## Discussion

The government is required "to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 102( (1976).  Moreover, the Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guaranty against cruel and unusual punishment.  *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).  To state an Eighth Amendment claim for denial of medical care, plaintiff must demonstrate that the actions of defendants (or their failure to act) amounted to deliberate indifference to a serious medical need. *See Estelle*, 429 U.S. at 106.  Deliberate indifference to a serious medical need requires proof that, objectively, plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed either to provide it or to ensure that the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

As noted above, the medical condition at issue must be serious.  *See  Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (no expectation that prisoners will be provided with unqualified access to health care).  Proof of an objectively serious medical condition, however, does not end the inquiry.  The second component of proof requires "subjective recklessness" in the face of a serious medical condition.  *Farmer*, 511 U.S. at 839-40.  "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk."  *Rich v. Bruce*, 129 F. 3d 336, 340 n.2 (4th Cir. 1997).  As the Fourth Circuit has explained: "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a

risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844).  If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted."  *Farmer*, 511 U.S. at 844.

Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris* 240 F.3d 383, 390 (4th Cir. 2001) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken) (citing *Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998)).  Further, "[d]isagreements between an inmate and a physician over the inmate's proper care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).

Warden Parrish, the correctional defendant, has raised an affirmative defense, namely that plaintiff has failed to exhaust administrative remedies with respect to the alleged slip and fall incident, as required under the Prison Litigation Reform Act of 1995 ("PLRA"), Pub. L. 104-134, 110 Stat. 1321, Title VIII.  The PLRA generally requires a prisoner to exhaust administrative remedies before filing suit in federal court.

A provision of the PLRA, 42 U.S.C. § 1997e(a), provides: "No action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  The Supreme Court has interpreted the language of this provision broadly, holding that the phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Thus, the exhaustion provision plainly extends to plaintiff's claim, which is subject to dismissal

5

unless she can show that she has satisfied the administrative exhaustion requirement under the PLRA, or that the correctional defendant has forfeited the right to raise non-exhaustion as a defense. *See Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003).

The PLRA's exhaustion requirement is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *Id*. at 530; *see also Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or final administrative review after the prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "'to the highest possible administrative level'") (citation omitted), *abrogated on other grounds by Woodford v. Ngo*, 548 U.S. 81 (2006); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not also seek judicial review); *Gibbs v. Bureau of Prisons*, 986 F.Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process).

In Maryland, filing a request for administrative remedy with the Warden of the prison in which one is incarcerated within thirty calendar days of the incident (or of the date the inmate first gained knowledge of the incident or injury) is the first of three steps in the Administrative Remedy Procedure ("ARP") grievance process provided by the Division of Correction to its prisoners. If this request is denied, the prisoner has thirty calendar days to file an appeal with the Commissioner of Correction. If this appeal is denied, the prisoner has thirty days in which to file an appeal to the Executive Director of the IGO. *See* Division of Correction Directive 185-002.VI.L-N; *see also* Md. Code, Corr. Serv. Art. §§ 10-201 to 10-209. Although plaintiff

initiated the ARP grievance process, she did not fully grieve her complaint by completing the latter steps in the process.  ECF 15, Exhibit 4 at ¶¶ 2-3.  Thus, her claims that Warden Parrish failed to correct the problem with the leak or failed to oversee her medical care are subject to dismissal.

To the extent plaintiff is alleging that the Warden negligently failed to order repair of the leak, her claim is prefaced on a state tort claim of negligence.  A negligence claim does not constitute a constitutional or federal statutory violation, and thus cannot be brought in this Court by means of a claim under § 1983.  *See Daniels v. Williams*, 474 U.S. 327 (1986).  As underlying constitutional claims are not established, the Court declines to exercise supplemental jurisdiction to address any state tort claims of negligence that were raised in the complaint.  *See* 28 U.S.C. § 1367(c).

To the extent that plaintiff premises her medical claim on § 1983 liability based on the Warden's supervisory authority, such claim requires a showing that: (1) the supervisory defendant failed promptly to provide an inmate with needed medical care; (2) the supervisory defendant deliberately interfered with the prison doctors' performance; or (3) the supervisory defendant tacitly authorized or was indifferent to the prison physicians' constitutional violations. *See Miltier v. Beorn*, 896 F. 2d 848, 854 (4th Cir. 1990); *see also Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984).  Plaintiff has advanced no evidence to support such a claim.  Rather, it appears that she seeks to hold Warden Parrish responsible for the alleged lack of medical care due solely to his role as administrator of the facility.  This is the very essence of the doctrine of *respondeat superior*, which has no place in § 1983 litigation.  Defendant Parrish is entitled to summary judgment in his favor with regard to such claim.

As to the claims regarding Dr. Singh, plaintiff's allegation that she was denied prompt

and appropriate treatment for her knee problem is plainly contradicted by the record.  Plaintiff underwent arthroscopic surgery on her right knee nearly four years ago, prior to the slip-and-fall in issue.  *See* ECF 9, Exhibit 2-2a.  Since that time, Dr. Singh and other health care providers have treated plaintiff's right knee complaints.  *Id*., Exhibit 1, ¶ 3.  More than six months prior to the slip-and-fall, plaintiff was seen by Dr. Singh for knee treatment.  *Id*., Exhibit 1, ¶ 4 and Exhibit 2-2a.  At that time, plaintiff informed Dr. Singh of her prior knee surgery and indicated she took various non-steroidal pain medications ("NSAIDs").  Dr. Singh counseled plaintiff that some medications, including NSAIDS, could further compromise her kidney problems.[5]  Dr. Singh also ordered a right knee x-ray, and discussed referring plaintiff for a nephrology work up, including a kidney sonogram. An x-ray, taken July 8, 2010, revealed narrowing of the medial compartmental joint space with tibial peaking and marginal osteophytes.  *Id*., Exhibit 1, ¶ 4-5 and Exhibit 2-2a and 2b.  The clinical impression was that plaintiff had no acute disease in the knee but suffered from degenerative joint disease.  *Id*., Exhibit 4.

On January 13, 2011, Dr. Singh examined plaintiff during a chronic care visit and discussed weight loss and the result of the x-ray.  Plaintiff refused basic gynecological screening and also refused physical therapy to help her knee.  She was prescribed medication for other ailments as well as Tylenol for knee pain.  Plaintiff became angry during the discussion of weight loss. *Id*., Exhibit 2-c and Exhibits 5 and 5a.

As noted, plaintiff fell on January 23, 2011.  Thereafter, medical staff provided plaintiff with ice packs and Tylenol for knee swelling.  An x-ray was taken on January 29, 2011, which

---

[5] In addition to right knee osteoarthritis, plaintiff suffers from obesity, hypertension, chronic kidney disease, hyperlipidemia, and mental health problems, including depression and borderline personality disorder.  ECF 9, Exhibit 1, ¶ 2.

indicated no change in condition when compared to the x-ray taken July 8, 2010.  Notably, no evidence of fracture, dislocation or subluxation was found.  *Id*., Exhibit 1, ¶¶ 8-9 and Exhibit 4a.

Dr. Singh next examined plaintiff in the chronic care clinic on April 11, 2011.  Her knee was not swollen.  Plaintiff threatened litigation unless she was provided with an MRI of the knee. Dr. Singh sought approval with the utilization provider to try conservative treatments for plaintiff's long-standing knee arthritis.  Plaintiff was referred to physiatry[6] for pain management and provision of a brace to stabilize the knee joint.  On May 5, 2011, physiatry recommended an extended period of physical therapy.  *Id*., Exhibit 1, ¶¶ 10-11.  Plaintiff began therapy but refused to attend on several occasions.  *Id*., Exhibits 5, 5a and 5b.  During a medical visit on October 11, 2011, plaintiff told Dr. Singh she had been non-compliant with one of her medications.  Dr. Singh encouraged plaintiff to comply with medications, diet, exercise and weight loss.  Plaintiff became angry and threatened litigation if she did not receive an MRI of the right knee.  *Id*., Exhibit 1, ¶ 13.  Dr. Singh indicated that plaintiff must complete physical therapy before returning to physiatry, and that intra-articular injections would be considered if plaintiff's knee did not improve.  *Id*., Exhibit 1, ¶ 14.

There is no indication that Dr. Singh was deliberately indifferent to plaintiff's serious medical need by failing to secure treatment, including outside consultation with a specialist, medication, and physical therapy.  Plaintiff clearly disagrees with objective findings that her knee is merely arthritic and she refuses to comply with conservative treatments, including weight loss and physical therapy.  At most, the allegation that Dr. Singh has provided inappropriate treatment states nothing more than a claim of medical malpractice and negligence.  Under

---

[6] Physiatry is a branch of medicine dealing with the treatment of injury, disability, and disease using exercise, massage, mechanical aids, and various other physical methods (electro-therapy, hydrotherapy, etc.).  According to the Oxford English Dictionary, it is sometimes called physical medicine and rehabilitation.

Maryland law, a claim of medical malpractice may proceed in a state or federal court only after the claim has been submitted to the Maryland Health Claims Alternative Dispute Resolution Office ("HCADRO"). *See* Md. Code, Cts & Jud. Proc. Art., §§ 3-2A-01 *et seq.*; *see also Carroll v. Konits*, 400 Md. 167, 172, 929 A.2d 19, 22 (2007); *Wilson v. Gottlieb*, ___ F. Supp. 2d ___, 2011 WL 4479846, at *1, *6-8 (D. Md. Sept. 23, 2011); *Davison v. Sinai Hospital of Balt. Inc*, 462 F. Supp. 778, 779-81 (D. Md. 1978). There is no indication that plaintiff has submitted her claim to the HCADRO. In the absence of a demonstration that plaintiff has complied with this condition precedent to filing of a medical malpractice suit, this Court declines jurisdiction over her state law claims, and dismisses them, without prejudice. *See* 28 U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs*, 383 U. S. 715, 726 (1966).

Of import here, "an inadvertent failure to provide adequate medical care does not amount to deliberate indifference." *Estelle*, *supra*, 429 U.S. at 105. Mere negligence or malpractice does not rise to a constitutional level. *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Donlan v. Smith*, 662 F. Supp. 352, 361 (D. Md. 1986). Accordingly, Dr. Singh is entitled to summary judgment as to plaintiff's Eighth Amendment claim.

### Conclusion

For the reasons stated above, defendants' motions to dismiss or for summary judgment shall be granted. A separate Order follows.


April 2, 2012                                    /s/_____
Date                                             Ellen L. Hollander
                                                 United States District Judge